BRIAN J. STRETCH (CABN 163973)
United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

MELANIE L. PROCTOR (CSBN 228971)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-7169
    melanie.proctor@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | C 17-0005 |
|     Plaintiff, | COMPLAINT |
| v. | |
| GREENLIGHT ORGANIC, INC; NEEL-KAMAL AULAKH; PARAMBIR AULAKH; APRAMJEET SINGH; AND MONIKA GILL, | |
|     Defendants. | |

Plaintiff United States of America, on behalf of the Department of Homeland Security, U.S. Customs and Border Protection ("CBP"), hereby alleges as follows:

1. This is a suit to collect a civil penalty assessed against Greenlight Organic, Inc. and its principals (collectively, "Greenlight") pursuant to 19 U.S.C. § 1509 and 19 C.F.R. § 163.6(b). The penalty was assessed as a result of Greenlight's failure to comply with an administrative summons for the production of certain documents relating to the importation of textiles entered at the Ports of Los Angeles and San Francisco between 2007 and 2011.

2. In support of this Complaint, Plaintiff is contemporaneously filing the Declaration of Thomas Soo Woo and attached exhibit.

COMPLAINT
C 17-0005

**PARTIES**

3. Plaintiff United States brings this Complaint on behalf of CBP, an agency of the United States charged by Congress with enforcing the Nation's customs laws and regulations.

4. Defendant Greenlight Organic, Inc. is an importer and distributor of athletic apparel and textiles currently located in Dublin, California.

5. Defendant Neel-Kamal Aulakh is a co-founder and former owner of Greenlight, who resides in Dublin, California.

6. Defendant Parambir S. Aulakh is a co-founder and former owner of Greenlight, who resides in Dublin, California.

7. Defendant Apramjeet Singh is the current owner of Greenlight, who resides in Dublin, California.

8. Defendant Monika Gill is the former executive director of Greenlight, who resides in San Jose, California.

**JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345 and 1355.

10. The Court has personal jurisdiction over Defendants because Defendants are located in this judicial district.

11. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b) and 1395(a).

**INTRADISTRICT ASSIGNMENT**

12. Four of the five Defendants are located in Alameda County, and the events and omissions which give rise to this action occurred in Alameda County; accordingly, this action should be assigned to the San Francisco Division or the Oakland Division.

**FACTUAL ALLEGATIONS**

13. Greenlight is an importer and distributor of athletic apparel and textiles, currently located in Dublin, California. It was founded in 2007, and began importing merchandise from China, Vietnam, and India in July of that year.

14. In 2011, the Department of Homeland Security, U.S. Immigration and Customs

Enforcement, Homeland Security Investigations ("HSI") received information that Greenlight had misclassified merchandise and engaged in double invoicing. Double-invoicing is a scheme where an importer keeps two sets of invoices, one of which states the actual value of the merchandise used to pay the manufacturer and a second invoice, with a lower purchase price, that is submitted to CBP to be used in calculating duties owed to CBP. Because duties owed to CBP for imported athletic apparel and textiles are generally based on the value of the merchandise, submitting an invoice with a lower purchase price results in lower duties paid to the government.

15. At approximately the same time it received the information about misclassification and double invoicing, HSI received an allegation of consumer fraud by Greenlight based on the company's claims that their apparel was made of recycled polyester or organic cotton. HSI coordinated with CBP, and in October 2011, CBP targeted a Greenlight shipment in the Port of Los Angeles/Long Beach ("the LA Shipment").

16. After testing t-shirt samples from the LA Shipment, CBP discovered that Greenlight misclassified the merchandise as woven, with man-made fibers, when the merchandise was actually knit, of polyester material, and therefore subject to a higher duty rate. This scheme allowed Greenlight to pay significantly lower duties for the imported merchandise. The Port of Los Angeles/Long Beach referred the case to the Port of San Francisco for review of additional Greenlight entries of merchandise ("entries") that entered through the Port of San Francisco.

17. On December 6, 2011, CBP issued a demand for information to Greenlight, seeking verification of production location and costs for a March 14, 2011 entry of men's t-shirts. The demand required compliance within 30 days. Greenlight failed to respond to the demand.

18. On December 19, 2011, CBP and HSI met with Greenlight's principals, CEO Neel-Kamal Aulakh and Executive Director Monika Gill, at the company's headquarters, which were then located in Fremont, California. CBP informed Greenlight that CBP had initiated an investigation into Greenlight's potential misclassification and undervaluation of imported merchandise. CBP also requested information for a single entry on March 14, 2011 ("CBP request for information").

19. Greenlight provided certain documents to CBP in response to the request for information; however, not all of the requested documents were provided.

1  20. At the December 19, 2011 meeting, HSI agents issued a Department of Homeland
2  Security summons demanding that the company produce all documents, including entry records,
3  involving the importation of wearing apparel or textiles in the United States, in an effort to verify the
4  extent of Greenlight's misclassification and undervaluation schemes. The summons demanded the
5  following documents:
6      a. Entry summaries (CBP Form 7501);
7      b. Entry/Immediate Delivery forms (CBP Form 3461);
8      c. Packing lists, detailing the itemized list of articles;
9      d. Shipping documents, such as Bills of Lading or Manifests;
10     e. Freight bills/invoices and payment records;
11     f. Declarations or Certificates, if applicable;
12     g. Commercial invoices, indicating among other things, the date and terms of sale,
13     quantity, complete description of goods, and unit value;
14     h. Buying agency contracts/agreement;
15     i. Purchase orders;
16     j. Supporting documents to support merchandise classification;
17     k. Any receipts of payment for goods received or services rendered;
18     l. All documents required for verifying the calculation of entered value;
19     m. Product specification/description sheets;
20     n. List and contact information for all manufacturers;
21     o. List and contact information of all customers receiving goods or materials from
22     Greenlight that were imported whole or in part from a foreign country;
23     p. Any additional correspondence to and from the manufacturer regarding the
24     production process or materials utilized of purchased goods;
25     q. Any information or research regarding the use of child labor contrary to law.
26 21. The documents demanded in the DHS summons issued on December 19, 2011 are
27 documents all listed at 19 C.F.R. § 163, App., known as "the (a)(1)(A) List."
28 22. The deadline for Greenlight to respond to the DHS summons was January 3, 2012.

COMPLAINT
C 17-0005

1 | Greenlight requested and received an extension until January 31, 2012 to respond. Despite the extension,
2 | Greenlight failed to respond by the extended deadline.

3 |   23. On February 9, 2012, Greenlight submitted a box of incomplete entry records, failing to
4 | produce many of the demanded records and indicating that the remaining records could not be located.
5 | A majority of the 148 total entries were missing one or more of the documents needed by CBP to
6 | determine the admissibility of the merchandise and to calculate the proper duties owed to the
7 | government. Specifically, CBP received entry summaries for 125 entries; entry/immediate delivery
8 | filing documents for 114 entries; shipping documents for 96 entries; invoices for 97 entries; packing lists
9 | for 94 entries; freight bills for 34 entries; payment support documents for 60 entries; and classification
10 | support documents for 102 entries.

11 |   24. On December 14, 2012, CBP's Regulatory Audit unit issued a final audit report covering
12 | all entries by Greenlight from January 1, 2007 to December 31, 2011. The audit revealed Greenlight had
13 | engaged in systematic double-invoicing, undervaluation, and misclassification. The audit calculated a
14 | total undervaluation of $616,444, resulting in an estimated loss of revenue of $217,968.22.
15 | Misclassification was discovered in 122 of the 148 total entries, resulting in an estimated loss of revenue
16 | of $20,548.34.

17 |   25. CBP initiated a penalty action under 19 U.S.C. § 1592, a customs fraud penalty statute,
18 | for misclassification and undervaluation through the use of double invoices. On April 15, 2014, CBP
19 | issued a pre-penalty notice pursuant to § 1592 in the amount of $3,232,032, based on a culpability level
20 | of fraud. On May 16, 2014, after Greenlight failed to respond to the notice, CBP issued the Section 1592
21 | penalty, along with a demand for lost revenue for $238,516.56 under 19 U.S.C. § 1592(d). To date,
22 | Greenlight has failed to pay any portion of these penalties.

23 |   26. Pursuant to 28 U.S.C. § 1582, the United States Court of International Trade has
24 | exclusive jurisdiction over actions by the United States to recover Section 1592 penalties. However,
25 | because the CIT is a court of limited jurisdiction, it does not have jurisdiction over the recordkeeping
26 | penalties imposed by 19 U.S.C. § 1509.

27 |   27. On January 12, 2016, CBP issued a pre-penalty notice pursuant to 19 U.S.C. § 1509,
28 | proposing a $100,000 recordkeeping penalty for one entry, at a proposed culpability level of willful

COMPLAINT
C 17-0005

failure to maintain or retrieve the demanded records, for the failure to respond to both the DHS summons and the CBP request for information. In the notice, CBP advised Greenlight of its right to respond as to why it should not pay the penalty. On January 20, 2016, Greenlight, through counsel, responded and claimed that Greenlight had complied or substantially complied with the summons as part of the earlier audit. On January 22, 2016, CBP issued the $100,000 penalty, and again notified Greenlight of its right to make an oral and/or written presentation as to why it should not pay the penalty.

28. On January 29, 2016, Greenlight petitioned CPB for review of the penalty assessment, mainly reasserting its earlier arguments. It also asserted that the Section 1509 penalty could not be assessed in conjunction with the Section 1592 penalty. The petition was denied by CBP, which concluded that Greenlight had not complied with the summons and noted that CBP could pursue both penalties because they were for separate violations. Greenlight did not respond to the petition decision, nor did Greenlight pay the Section 1509 penalty.

29. In April 2016, CBP reviewed the evidence and the specific recordkeeping violations. As a result, CBP re-assessed the Section 1509 penalty at a culpability of negligence instead of willfulness, and applied it to all of the 148 entries in which demanded records were not produced, instead of just a single entry. CBP issued an amended penalty notice, revising the level of culpability to negligence, and increasing the penalty amount to $520,656. The penalty was assessed on Greenlight's failure to comply with both the DHS summons and the CBP request for information. CBP again notified Greenlight of its right to make an oral and/or written presentation as to why it should not pay the amended penalty. Payment or a formal response was due within seven days. Greenlight did not petition for review of the revised penalty assessment or otherwise respond to the amended penalty notice; nor did Greenlight pay the Section 1509 penalty.

**FIRST CAUSE OF ACTION**

30. Plaintiff hereby incorporates by reference each and every allegation set forth in the foregoing paragraphs.

31. The December 19, 2011 DHS summons constituted a lawful demand for records under 19 U.S.C. § 1509(a)(1)(A), with which Greenlight has failed to comply.

32. Greenlight is liable to the United States for a civil penalty in the amount of $520,656, plus interest and costs.

## **PRAYER FOR RELIEF**

The United States respectfully requests the Court to enter judgment in favor of the United States in the amount of $520,656, plus interest and costs, and to grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

/s/Melanie L. Proctor
MELANIE L. PROCTOR
Assistant United States Attorney

Attorneys for the United States of America

DATED: January 3, 2017

COMPLAINT
C 17-0005